TODD BLANCHE
Deputy Attorney General of the United States
SIGAL CHATTAH
First Assistant United States Attorney
District of Nevada
Nevada Bar Number 8264
JESSICA OLIVA
KIMBERLY M. FRAYN
Assistant United States Attorneys
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: (702) 388-6336
Fax: (702) 388-6418
Jessica.Oliva@usdoj.gov
Kimberly.Frayn@usdoj.gov

*Attorneys for the United States*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID RALPH WEBBER,<br><br>Defendant. | Case No. 2:25-cr-00229-JAD-EJY<br><br>SUPERSEDING CRIMINAL INDICTMENT<br><br>VIOLATIONS:<br><br>Introduction of a Misbranded Drug into Interstate Commerce (21 U.S.C. §§ 331(a), 333(a))<br><br>Wholesale Distribution of Prescription Drugs without a License (21 U.S.C. §§ 331(t), 333(b), and 353(e)(1)(A))<br><br>Smuggling (18 U.S.C. §§ 545, 2)<br><br>Mail Fraud (18 U.S.C. §§ 1341, 2) |

**THE GRAND JURY CHARGES THAT:**

At times material to this Superseding Indictment:

### INTRODUCTORY ALLEGATIONS

#### Defendant and His Companies

1

1. Defendant DAVID RALPH WEBBER, a resident of Henderson, Nevada, owned and operated two Nevada companies: Passion Plus Enterprises Inc. ("Passion Plus") and Whole Science Health.

2. WEBBER was neither registered as a pharmaceutical manufacturer with the FDA, nor licensed in District of Nevada, or any state, as a pharmacist, medical practitioner authorized to administer prescription drugs, or as a wholesaler of prescription drugs.

3. From at least 2018 to the present, WEBBER used his companies to import misbranded prescription drugs containing the active pharmaceutical ingredients sildenafil, sildenafil citrate, and tadalafil into the United States in the form of capsules and tablets ("pills") that were manufactured in India at facilities that were not registered with U.S. Food and Drug Administration ("FDA") as required under the Federal Food, Drug, and Cosmetic Act ("FDCA") Title 21, United States Code, Section 301, *et seq*.

## The FDA's Regulation of Drugs

4. The FDA was the agency of the United States charged with the responsibility of protecting the health and safety of the American public by enforcing the FDCA. One of the main purposes of the FDCA is to ensure that human drugs sold in the United States were safe and effective for their intended uses and bore labeling containing complete, true, and accurate information. The FDA's responsibilities under the FDCA included regulating the manufacture, labeling, and distribution of all drugs shipped or received in interstate commerce. The FDA's responsibilities also included inspecting facilities, whether domestic or foreign, where drug products were manufactured, labeled, and packaged; examining the records at such facilities to determine whether the drugs were manufactured, labeled, and packaged under conditions whereby their quality could be assured; examining the facilities

and controls used; and, where appropriate, preventing products that were improperly manufactured, labeled, and packaged from reaching the marketplace.

5. In order to legally market a drug in interstate commerce, the drug's manufacturer was required to comply with all applicable provisions of the FDCA and its implementing regulations.

6. The FDCA defined the term "drug" to include (a) articles that were "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" in man; and/or (2) articles (other than food) intended to affect the structure or any function of the body of man. 21 U.S.C. § 321(g)(l)(B) and (C).

7. Some drugs regulated by the FDA were considered "prescription drugs." A "prescription drug" was any drug that, "because of its toxicity or other potentiality for harmful effect, or the method of its use, or the collateral measures necessary to its use, is not safe for use except under the supervision of a practitioner licensed by law to administer such drug"; or any drug that was "limited by an approved application . . . to use under the professional supervision of a practitioner licensed by law to administer such drug. 21 U.S.C. § 353(b)(l). A drug approved as a prescription drug was required to bear the symbol "Rx only" on its label. 21 U.S.C. § 353(b)(4)(A).

8. Under the FDCA, the term "label" meant a display of written, printed, or graphic matter upon the immediate container of any article. 21 U.S.C. § 321(k).

9. Under the FDCA, the term "labeling" meant all labels and other written, printed, or graphic matter (a) upon any article or any of its containers or wrappers; or (b) accompanying such article. 21 U.S.C. § 321(m).

10. The FDCA required any establishment that engaged in the manufacture, preparation, propagation, compounding, or processing of a drug to register with FDA in

accordance with 21 U.S.C. § 360. The failure to register was a prohibited act under the FDCA. 21 U.S.C. § 331(p).

11. "Wholesale distribution" of drugs requiring a prescription meant the distribution to a person other than a consumer or patient, or receipt of such drugs by a person other than the consumer or patient, unless a specified exception applied. 21 U.S.C. § 353(e)(4). A "wholesale distributor" was "a person (other than a manufacturer, a manufacturer's co-licensed partner, a third-party logistics provider, or repackager) engaged in wholesale distribution." 21 U.S.C. § 360eee(29).

12. The FDCA prohibited engaging in wholesale distribution of any drug requiring a prescription without the appropriate license. 21 U.S.C. § 353(e)(1)(A).

13. The FDCA prohibited the introduction or delivery for introduction into interstate commerce, or the causing thereof, of any drug that was misbranded. 21 U.S.C. § 331(a).

14. Under the FDCA, a drug was deemed to be misbranded:

    a.    if its labeling was false or misleading in any particular, 21 U.S.C. § 352(a); or

    b.    if the label did not bear the established name and quantity of each active ingredient, 21 U.S.C. § 352(e)(l)(A); or

    c.    if it was manufactured, prepared, or processed in an establishment not duly registered with the FDA, 21 U.S.C. § 352(o); or

    d.    if it was a prescription drug and its labeling "failed to bear adequate directions for use" under which a layperson could use the drug safely and for the purposes for which it was intended. 21 U.S.C. § 352(f)(1); 21 C.F.R. § 201.5.

The Drugs

15. "Viagra®" was a drug within the meaning of 21 U.S.C. § 321(g)(1), and a prescription drug within the meaning of 21 U.S.C. § 353(b)(1). Viagra was the brand name for Pfizer, Inc.'s FDA-approved erectile dysfunction drug containing the active pharmaceutical ingredient sildenafil and sildenafil citrate.

16. "Cialis®" was a drug within the meaning of 21 U.S.C. § 321(g)(1), and a prescription drug within the meaning of 21 U.S.C. § 353(b)(1). Cialis was the brand name for Eli Lilly & Company's FDA-approved erectile dysfunction drug containing the active pharmaceutical ingredient tadalafil.

17. The FDA's approval of Viagra and Cialis was limited to use under the professional supervision of a practitioner licensed by law to administer such drug; therefore, Viagra and Cialis were "prescription" drugs under 21 U.S.C. § 353(b)(1). Due to toxicity and other potentially harmful effects (*e.g.*, life-threatening drops in blood pressure, painful erections that result in permanent injury to the penis), drugs similar to Viagra and Cialis were not safe for use except under the supervision of a practitioner licensed by law to administer them, and were thus prescription drugs as well.

18. Drugs containing the active pharmaceutical ingredients of sildenafil, sildenafil citrate, and tadalafil were prescription drugs because of their effect on the human body. Sildenafil, sildenafil citrate, and tadalafil opened capillaries, which increased the blood flow and heart rate. Clinical trials resulted in the posting of possible adverse reactions in all sildenafil, sildenafil citrate, and tadalafil product literature. Licensed practitioners were warned that persons on heart medications (such as Plavix) and/or blood-thinning medications (such as Coumadin) could suffer a heart attack or stroke if they used sildenafil, sildenafil citrate, and tadalafil.

<u>Defendant's Distribution of the Misbranded Drugs</u>

19. WEBBER purchased from manufacturers in India hundreds of thousands of pills containing sildenafil, sildenafil citrate, and tadalafil. To conceal the purpose of his payments, WEBBER falsely declared that the wire transfers to these manufacturers were for business management consultancy services.

20. To evade customs detection and enforcement, WEBBER caused the manufacturers in India to send the pills with shipments containing false declarations of their contents.

21. After several shipments addressed to WEBBER and his companies were confiscated by customs, WEBBER caused the manufacturers in India to send the pills in small shipments to a network of straw recipients located in the District of Nevada. WEBBER then collected the pills from this network of individuals and paid them for receiving packages on his behalf.

22. WEBBER paid a packaging company to label the capsules according to his instructions. The pills were labeled with a variety of names including "Ride," "Kinky Kong," "Stif," "TBone," and "Kinky Pink." Despite the variety of names, scientific analyses of the pills sold by WEBBER revealed that virtually all of them contained similar doses of sildenafil, sildenafil citrate, and tadalafil, the active pharmaceutical ingredients in the FDA-approved prescription drugs Viagra and Cialis.

23. WEBBER caused the pills to bear labels with a fictitious list of ingredients and false claims that the drugs were "100% Natural" and did not require a prescription. The labeling did not disclose the active pharmaceutical ingredients sildenafil, sildenafil citrate, and tadalafil, did not contain an "Rx Only" marking, and did not bear adequate directions for use or adequate warnings.



*Representative Example Labeling of WEBBER's Pills*

24. WEBBER sold the misbranded prescription drugs to retailers such as smoke shops, convenience stores, and adult novelty stores in the District of Nevada and throughout the southwestern United States.

25. WEBBER also sold the drugs directly to consumers through a website he operated.

26. The retailers and individual consumers who purchased pills from WEBBER were unaware that the pills contained prescription medication, often in amounts exceeding twice the maximum recommended dose, and were processed by unregulated manufacturers in India.

27. WEBBER was a wholesale distributor of drugs in the District of Nevada, but he knew that he was not properly licensed by Nevada, or any other state, to conduct this activity.

28. WEBBER shipped misbranded prescription drugs in interstate commerce via United States Postal Service and via commercial interstate carriers, including FedEx, to fulfill orders he received from customers through his website.

29. In total, WEBBER made more than $1.9 million dollars in revenue from his sales of misbranded prescription drugs.

## COUNT ONE
Introduction of a Misbranded Drug into Interstate Commerce
(21 U.S.C. §§ 331(a), 333(a)(2))

30. The factual allegations in Paragraphs 1 through 29 of the Indictment are incorporated by reference and realleged as though set forth fully herein.

31. On or about January 24, 2022, in the State and Federal District of Nevada and elsewhere,

DAVID RALPH WEBBER,

defendant herein, with the intent to defraud and mislead, introduced and delivered for introduction into interstate commerce and caused to be introduced and delivered for introduction into interstate commerce a prescription drug, that is, four 24-count bottles and four individually packaged pills containing sildenafil, and sildenafil citrate shipped from Las Vegas, Nevada to Santa Ana, California, which was misbranded within the meaning of 21 U.S.C. § 352(a), (f), and (o), in that it bore false and misleading labeling, lacked labeling that contained adequate directions for its use, and was manufactured, prepared, propagated, compounded, and processed in an establishment not registered with the FDA, all in violation of 21 U.S.C. §§ 331(a), 333(a)(2).

/ / /

/ / /

/ / /

## COUNTS TWO TO FIVE
### Wholesale Distribution of Prescription Drugs without a License
(21 U.S.C. §§ 331(t), 333(b), and 353(e)(1)(A))

32. The factual allegations in Paragraphs 1 through 29 of the Indictment are incorporated by reference and realleged as though set forth fully herein.

33. On or about the dates below, in the State and Federal District of Nevada and elsewhere,

### DAVID RALPH WEBBER

defendant herein, knowingly engaged in the wholesale distribution of the prescription drugs described below in interstate commerce, and willfully caused the wholesale distribution of prescription drugs in interstate commerce, without being licensed by the state of Nevada, or any other state, to do so, each distribution a separate violation of 21 U.S.C. §§ 331(t), 333(b), and 353(e)(1)(A):

| COUNT | DATE | PURCHASER | DRUGS DISTRIBUTED |
|---|---|---|---|
| TWO | 1/11/2023 | Company A | Approximately 10 boxes, each containing 24 bottles of sildenafil, sildenafil citrate, and/or tadalafil; and<br><br>Approximately 40 packs, each containing six capsules of sildenafil, sildenafil citrate, and/or tadalafil |
| THREE | 2/20/2023 | Company B | Approximately 28 boxes, each containing 24 bottles of sildenafil, sildenafil citrate, and/or tadalafil |
| FOUR | 3/10/2023 | Company C | Approximately 20 boxes, each containing 24 bottles of sildenafil sildenafil citrate, and/or tadalafil |
| FIVE | 3/16/2023 | Company D | Approximately 434 boxes, each containing 24 bottles of sildenafil, sildenafil citrate, and/or tadalafil |

///

///

///

9

**COUNTS SIX TO TWELVE**
Smuggling
(18 U.S.C. §§ 545 and 2)

34. The factual allegations in Paragraphs 1 through 29 of the Indictment are incorporated by reference and realleged as though set forth fully herein.

35. On or about the dates below, in the State and Federal District of Nevada and elsewhere,

DAVID RALPH WEBBER,

defendant herein, and others known and unknown to the Grand Jury, aiding and abetting one another, fraudulently and knowingly imported and brought merchandise, namely, parcels of unlabeled bulk sildenafil, sildenafil citrate, and tadalafil, into the United States contrary to law, that is, with labeling that was false and misleading as to the parcels' contents, labels that did not contain accurate statements of the packages' contents in terms of weight, measure, and numerical count, and labeling that did not bear adequate directions for use, contrary to 21 U.S.C. §§ 331(a) and 352(a)(1), (b), (f), and received, concealed, bought, sold, and facilitated the transportation, concealment, and sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law, each importation a separate violation of 18 U.S.C. § 545:

| COUNT | DATE | FROM | TO | FALSELY DECLARED AS |
|---|---|---|---|---|
| SIX | 9/5/2023 | India | Las Vegas, Nevada | Hemo Life, Livo Life |
| SEVEN | 9/5/2023 | India | Las Vegas, Nevada | Vaji Vati, Hemo Life |
| EIGHT | 9/12/2023 | India | Las Vegas, Nevada | Jeeva Vati, Vrishya Vati |
| NINE | 9/14/2023 | India | Las Vegas, Nevada | Vaji Vati, Rhuemo Life |
| TEN | 10/31/2023 | India | Las Vegas, Nevada | Ayurvedic Medicines |
| ELEVEN | 11/2/2023 | India | Las Vegas, Nevada | Almo Life, Livo Life, Hemo Life |

| COUNT | DATE | FROM | TO | FALSELY DECLARED AS |
|---|---|---|---|---|
| TWELVE | 11/5/2023 | India | Las Vegas, Nevada | Vaji Vati |

COUNTS THIRTEEN TO SEVENTEEN
Mail Fraud
(18 U.S.C. §§ 1341 and 2)

36.  The factual allegations in Paragraphs 1 through 29 of the Indictment are incorporated by reference and realleged as though set forth fully herein.

37.  From a date unknown but no later than on or about May 22, 2018, through a date unknown but no earlier than on or about September 3, 2024, in the State and Federal District of Nevada and elsewhere,

DAVID RALPH WEBBER,

defendant herein, and others known and unknown to the grand jury, participated in and devised and intended to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and omissions.

38.  The purpose of the scheme and artifice to defraud was to obtain money from retailers and other purchasers of misbranded pills bearing labels with a fictitious list of ingredients and false claims that the drugs were "100% Natural" and did not require a prescription. The labeling did not disclose the active pharmaceutical ingredients sildenafil, sildenafil citrate, and tadalafil, did not contain an "Rx Only" marking, and did not bear adequate directions for use or adequate warnings.

39.  On or about the dates below, in the State and District of Nevada and elsewhere, for the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, the defendant and others known and unknown to the grand jury, aiding and abetting each other, knowingly received misbranded pills from outside the

United States and delivered and caused to be delivered by mail misbranded pills in exchange for payment, with each mailing constituting a separate violation of Title 18, United States Code, Sections 1341 and 2.

| COUNT | DATE SHIPPED | RECIPIENT OF MAILING |
|---|---|---|
| THIRTEEN | 9/6/2023 | A.D.G. |
| FOURTEEN | 9/27/2023 | M.I. |
| FIFTEEN | 10/04/2023 | Postal Inspector in an undercover capacity |
| SIXTEEN | 10/30/2023 | J.R.C. |
| SEVENTEEN | 3/04/2024 | J.G. |

**FORFEITURE ALLEGATION ONE**
Introduction of a Misbranded Drug into Interstate Commerce,
Wholesale Distribution of Prescription Drugs without a License, and
Mail Fraud

40. The allegations contained in Counts 1-5 and 13-17 of this Superseding Criminal Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture under 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(7).

41. Upon conviction of any of the felony offenses charged in Counts 1-5 and 13-17 of this Superseding Criminal Indictment,

DAVID RALPH WEBBER,

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to violations of 21 U.S.C. § 331(a) and 331(t) and 18 U.S.C. § 1341, specified unlawful activities as defined in 18 U.S.C. § 1956(c)(7)(F), involving a Federal health care offense as defined in 18 U.S.C. § 24, or a conspiracy to commit such offenses:

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1341, a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(B), or a conspiracy to commit such offense:

defendant herein, shall forfeit to the United States of America, property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of 21 U.S.C. § 331(a) and 331(t) and 18 U.S.C. § 1341, involving a Federal health care offense as defined in 18 U.S.C. § 24:

an in personam criminal forfeiture money judgment including, but not limited to, at least $1,925,675 (property).

42. If any property subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(a)(7), as a result of any act or omission of the defendant-

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, under 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant for the property listed above.

All under 21 U.S.C. § 331(a) and 331(t); 18 U.S.C. § 1341; 18 U.S.C. § 981(a)(1)(C) with 21 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(7); and 21 U.S.C. § 853(p).

## FORFEITURE ALLEGATION TWO
### Smuggling

43. The allegations contained in Counts 6-12 of this Superseding Criminal Indictment are hereby realleged and incorporated herein by reference for the purpose of alleging forfeiture under 18 U.S.C. § 545 with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); and 18 U.S.C. § 982(a)(2)(B).

44. Upon conviction of any of the felony offenses charged in Counts 6-12 of this Superseding Criminal Indictment,

**DAVID RALPH WEBBER,**

defendant herein, shall forfeit to the United States of America, merchandise introduced into the United States in violation of 18 U.S.C. § 545, or the value thereof:

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 545, or a conspiracy to commit such offense:

defendant herein, shall forfeit to the United States of America, any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 545, a specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7)(D), or a conspiracy to commit such offense:

defendant herein, shall forfeit to the United States of America, any property constituting, or derived from, proceeds obtained directly or indirectly, as the result of violations of 18 U.S.C. § 545, or a conspiracy to violate such offense:

an in personam criminal forfeiture money judgment including, but not limited to, at least $1,925,675 (property).

45. If any property being subject to forfeiture under 18 U.S.C. § 545 with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); and 18 U.S.C. § 982(a)(2)(B), as a result of any act or omission of the defendant –

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America, under 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant for the property listed above.

All under 18 U.S.C. § 545 with 28 U.S.C. § 2461(c); 18 U.S.C. § 981(a)(1)(C) with 28 U.S.C. § 2461(c); 18 U.S.C. § 982(a)(2)(B); and 21 U.S.C. § 853(p).

DATED: this 25th day of February, 2026.

A TRUE BILL:

/S/
FOREPERSON OF THE GRAND JURY

TODD BLANCHE
Deputy Attorney General

JESSICA OLIVA
KIMBERLY M. FRAYN
Assistant United States Attorneys